IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| LUANE CLYMO, | Case No. 2:18-cv-00168-SU |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| AMERICAN STATES INSURANCE COMPANY, | |
| Defendant. | |

SULLIVAN, United States Magistrate Judge:

Plaintiff Luane Clymo brings this action against defendant American States Insurance Co., for its alleged failure to pay for property damage under plaintiff's property insurance policy. Defendant has moved for partial summary judgment on plaintiff's prayer for $65,000 in consequential damages. (Docket No. 36). Plaintiff opposes. (Docket No. 38). The Court heard oral argument on March 21, 2019.

Page 1 – FINDINGS AND RECOMMENDATION

(Docket No. 54). For the following reasons, the Court should GRANT defendant's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND

The parties agree that these facts are undisputed, *see* Pl. Resp., at 3 (Docket No. 38):

Plaintiff owned a residence in Haines, Oregon ("the Property"). Compl. ¶ 3 (Docket No. 1-1). Plaintiff leased the Property to two tenants, whom she ultimately evicted. *Id.* ¶¶ 4-7; Blessinger Decl., Ex. B (Docket No. 37-1). The tenants made numerous changes to the Property. Compl. ¶¶ 8-13. Plaintiff alleges that the tenants extensively "damaged and vandalized the Property" and stole certain items. *Id.* Plaintiff later sold the Property. *Id.* ¶¶ 23-25.

Plaintiff claims that the purchasers and subsequent owners of the Property, based on photographs taken before the tenants' damage, had offered to buy the Property for $465,000. *Id.* ¶ 23; Blessinger Decl., Ex. C, Luane Clymo Dep. 32:24-33:10 (Docket No. 37-1). Plaintiff did not repair the tenants' damage before selling the Property. *Id.* ¶ 22; Blessinger Decl., Ex. D, Tai Clymo Dep. 36:22-37:2 (Docket No. 37-1). Plaintiff was able to sell the Property for only $400,000. Compl. ¶ 25.

Plaintiff had insured the Property through defendant, and the tenants' damage occurred while the policy was in effect. Compl. ¶¶ 14-17; Blessinger Decl., Ex. A (Docket No. 37-1). Plaintiff submitted a claim for loss under the policy for the Property damage, but defendant denied coverage. *Id.* ¶¶ 18-20. Plaintiff claims

that the reason she did not repair the Property was that, because defendant denied coverage, she could not afford the repairs. *Id.* ¶ 22.

## PROCEDURAL BACKGROUND

In her Complaint, plaintiff brought three causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith, and (3) negligence *per se*. Compl., at 4-6. The Court previously dismissed the negligence *per se* claim. (Docket Nos. 26, 30).

Plaintiff prays for damages of $135,000, consisting of: (1) the alleged cost to repair or replace damage to real and personal property, in the amount of $70,000; and (2) "consequential damages," based on an alleged $65,000 reduction of the sales price when plaintiff sold the Property.[1]  *Id.* ¶¶ 10, 23-26, 34.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to point out the absence of any genuine issue of material fact; once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, a party may not rely on mere allegations or denials in pleadings, but must set forth specific facts supported by competent evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Far*

---

[1] $65,000 represents the originally offered sales price of $465,000 minus the ultimate sales price of $400,000.

*Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999). "A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quotation omitted). "The non-moving party has failed to meet its burden if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quotation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *Anderson*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The question on summary judgment is solely one of the law of contract damages in an insurance dispute. The parties agree to the above facts. Plaintiff prays for two types of damages: (1) the cost to repair the damage to the Property, of $70,000 and (2) consequential damages, based on an $65,000 reduction of the sales price due to the tenants' damage. Defendant argues that, as a matter of law, plaintiff is limited only to the first type of damages, and may not recover consequential damages in addition to the repair damages.

**I.      Damages for Alleged Breach of an Insurance Contract**

Because this is an action for failure to pay pursuant to an insurance contract, the action is one for breach of contract, for which plaintiff may recover contract damages. *See Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 106 (1992). Contract damages include consequential damages, "if the consequential damages were contemplated by the parties and were a natural and proximate result of the . . . breach." *Braught v. Granas*, 73 Or. App. 488, 493-94 (1985) (quotation omitted). Specifically, in the insurance context:

> Consequential damages are, by definition, those that the parties to a contract reasonably contemplate *at the time of execution*, not at some later date. As such, the question of whether it is reasonable to include as consequential damages costs in excess of the provisions of an insurance policy must be determined by reference to what was reasonably contemplated by the parties at the time of the execution of the policy. . . . [T]he intentions of the parties are expressed in the terms of the insurance policy itself, which contains express limitations on coverage.

*Megavail, Inc. v. Ill. Union Ins. Co.*, No. CIV.05-1374-AS, 2007 WL 3232605, at *8 (D. Or. Nov. 1, 2007) (citation and quotation omitted, italics in original).

An insured may typically not receive double recovery in seeking damages for breach of an insurance contract. *See Int'l Union of Operating Eng'rs, Local 701 v. Cent. Nat. Life Ins. Co.*, 271 Or. 66, 70 (1975). Double recovery results, for instance, where a party would "receive multiple payments for the same element of damage," that is, receive a windfall by recovering twice for the same single harm. *Nixon v. Cascade Health Servs., Inc.*, 205 Or. App. 232, 241 n.11 (2006). "[A]n insured is

entitled to the benefit of its bargain, and no more." *Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 227 (1996).

## II.     The Parties' Insurance Contract

The parties' insurance contract provides that "loss or damage" to the Property "will be settled at replacement cost, without deduction for depreciation." Blessinger Decl., Ex. A, at 2 (Docket No. 37-1). The contract defines "replacement cost" as "the cost to replace the item at the time of loss with comparable new property." *Id.*

The insurance contract limits liability for loss to the minimum of certain amounts:

> **1. Our** limit of liability for loss of any one item will not exceed the smallest of the following amounts:
> **a.** the cost to replace the item at the time of loss with comparable new property ("replacement cost");
> **b.** the cost to repair the item;
> **c.** the limit of liability that applies to Coverage B; or
> **d.** any Special Limit of Liability that applies, as described in the policy.

*Id.* (bold in original). In order to make a claim for loss, the insurance contract provides: "**You** may make claim under this policy for loss on an **actual cash value** basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis." *Id.* (bold in original). The insurance contract defines "Actual Cash Value" as: "The amount which it would cost to repair or replace damaged property with material of like kind and quality, less allowance for physical deterioration and depreciation." *Id.*, at 3.

### III.  Application to Plaintiff's Prayer for Damages

Under the insurance contract's terms, plaintiff is entitled to the lesser of the amount *actually* required or expended to repair or replace the Property to its pre-damage condition, or the amount it *would* cost to repair or replace the Property to its pre-damage condition at the time of loss.  If plaintiff does not perform actual repairs or replacement, she can recover only the amount it would cost to replace or repair.  Here, the repair or replace cost represents the $70,000 that plaintiff first prayed for in damages.  These damages would make plaintiff whole, as contract damages require.  Before the tenants' damage to the Property, plaintiff had an undamaged residence worth, based on the originally offered sales price, $465,000.  After the tenancy, plaintiff still had that Property, but with $70,000 in needed repair or replacement costs.  Awarding plaintiff $70,000, assuming that defendant wrongfully refused to cover the damages, would thus put plaintiff back in her original position.

Awarding plaintiff $65,000 in diminution in value damages, instead of the $70,000 in repair or replace costs, would be an alternate, but mutually exclusive, way to make plaintiff whole.  Before the tenants' damage, she had a residence she could sell for $465,000.  After the tenants' damage, she had a damaged residence she could sell only for $400,000.  $65,000 in damages, based on diminution in value, would thus be another way to make plaintiff whole.

However, plaintiff cannot recover $65,000 in diminution value damages *in addition to* $70,000 in repair or replace costs.  This would amount to double

recovery, and would put plaintiff in a much better position than her original one. That is, upon recovering $70,000, she would be made whole, but then, were she to receive an additional $65,000, she would now be in a better position by $65,000.

Put another way, were plaintiff to recover $70,000 in repair or replace damages, plus $65,000 in consequential damages from diminution in value, she would be recovering for the same exact harm but under two different theories of recovery. The Property suffered the diminution in value precisely because of the physical property damage. Repair or replace cost, and diminution in value, each separately represents how the amount by which the tenants' damage lowered the Property's value. Recouping either, but not both, of these types of damages would make plaintiff whole. *See, e.g., Costley v. Holman*, 45 Or. App. 501, 507 (1980) ("Diminution in value may also be established by evidence of cost of repairs where it is shown that the repairs were reasonable and necessary."). If plaintiff receives $70,000, she is in the position of having a fully restored property. If she receives $65,000, she receives the money she would have received if she had sold an undamaged property to the buyers. These remedies are mutually exclusive.[2]

An analogy to the law of property damages for torts is instructive. In *McCormick v. City of Portland*, 191 Or. App. 383, 378-89 (2004), the plaintiffs' property suffered physical harm from a landslide. The plaintiffs incurred costs to repair their property. The plaintiffs attempted to recover both the repair costs in

---

[2] This is not a case, for example, where, even after the insured property was fully repaired or replaced, it still suffered diminution in value not captured by repair or replacement value, which diminution might then be recoverable as consequential damages. *Cf. Gonzales v. Farmers Ins. Co. of Or.*, 210 Or. App. 54, 57-58 (2006), *aff'd*, 345 Or. 382 (2008).

addition to damages for the diminished property value.  The court denied the plaintiffs recovery for both types of damages, as it would have been an improper double recovery: "plaintiffs' theory is untenable: at the conclusion of restoration funded by the money they receive for repair costs, they will have a lot worth $175,000 plus, as a windfall, the $175,000 they received for lost market value." *Id.* at 388.  "The proper measure of damages for injury to property is that which will provide just compensation without enrichment." *Id.* (quotation omitted).  Just as repair costs and diminution in value were alternative, but exclusive, theories of recovery in *McCormick*, so too can plaintiff here not recover both repair costs and diminution of value.  *See also Johnson v. Nw. Acceptance Corp.*, 259 Or. 1, 12 (1971) ("Either diminution in value or cost of repair can be the appropriate measure [of damages].")

Plaintiff's reliance on a New York State case, *Bi-Economy Market, Inc. v. Harleysville Insurance Co. of NY*, 10 N.Y.3d 187 (2008), is misplaced.  *Bi-Economy* concerned whether, in addition to costs from physical damage from fire to the plaintiff business, it could also recover consequential damages on a theory of business interruption from denial of coverage.  The two theories of recovery in *Bi-Economy* thus addressed different harms: one from the physical fire damage, and one from the resulting loss of business that defendant's allegedly wrongful failure to provide coverage caused.  The plaintiff was harmed first, physically, by the fire, and second, financially, in being unable to continue the business uninterrupted.  Here, there is only one underlying harm: the tenants' physical damage, for which plaintiff

Page 9 – FINDINGS AND RECOMMENDATION

could be made whole either by awarding the repair or replace costs, or by awarding her the diminution in value that the Property, with the physical harm unrepaired, had in its sale price. This case is unlike *Bi-Economy* in that it is not the case that plaintiff first incurred repair or replace costs, and then, with the Property restored to its previous condition, there was still some *additional* harm caused by defendant's alleged breach that resulted in a diminution in value. To repair or replace the Property is, from the perspective of making plaintiff whole by returning her Property to its condition pre-tenancy, the same as compensating for diminution in value.

Defendant argues that the insurance contract's limitation on liability precludes consequential damages. This argument is unsuccessful. That contractual provision effects only a "limit of liability for loss," i.e., a limit on the amount that can be recovered for loss or damage to the Property. Consequential damages *might* be available if plaintiff could show that the failure of defendant to pay the repair or replace costs caused some other, additional harm, as in *Bi-Economy*; that is, if plaintiff suffered harm beyond just the loss of value in the Property due to defendant's failure to cover. In such a case, the consequential damages for the excess diminution in value would not represent additional recovery for the same loss, but could potentially be foreseeable damages caused by defendant's failure to pay for the loss it contracted to pay for. The limitation on liability would restrict plaintiff's recovery for the first loss, physical damage, but does not speak to the second, consequential, loss. By agreeing to pay for repair costs, defendant also

Page 10 – FINDINGS AND RECOMMENDATION

impliedly agreed, under contract principles, to pay for foreseeable damages should it unlawfully fail to pay for those costs. Although the insurance contract has a limitation on how it defines covered physical property damage, it does not explicitly exclude all other damages. There is no specific exclusion of consequential damages, and as such the Court will not read such an exclusion into the contract, especially when defendant drafted the contract. *See Gonzales*, 210 Or. App. 54; *Ortiz v. State Farm Fire & Cas. Co.*, 244 Or. App. 355, 360 (2011). On the facts as stipulated by the parties, however, there are no such *additional* consequential damages. There was only one type of harm—the tenants' physical property damage—which can be measured either by repair or replace costs, or by diminution in value, but not both.[3]

* * *

To make plaintiff whole under the insurance contract from the tenants' physical damage to the Property, she may recover either the repair or replacement costs, or diminution in value, but not both. The insurance contract explicitly allows repair or replace costs, which are $70,000. This amount is also greater than the alleged diminution in value of $65,000. Thus, plaintiff may recover only the $70,000 repair or replace costs, and not, in addition to that, $65,000 in consequential damages from diminution in value.

## RECOMMENDATION

For these reasons, the Court should GRANT defendant's Motion for Partial Summary Judgment and hold that plaintiff may not recover $65,000 in

---

[3] Plaintiff has also failed to present any evidence that consequential damages of this type were foreseeable by the parties at the time they entered into the insurance contract, as is required to show consequential damages.

Page 11 – FINDINGS AND RECOMMENDATION

consequential damages for diminution in value, in addition to $70,000 in repair or replace costs.

## SCHEDULING ORDER

These Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due May 29, 2019. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 15th day of May, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge